UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
SITTING AT ROCHESTER

| | |
|---|---|
| GURINDER JOHAL, persona representative of the Estate of AMARJEET JOHAL, and DILJOT SEKHON, personal representative of the Estate of AMARJIT SEKHON, and JASPREET SEKHON, personal representative of the Estate of JASVINDER KAUR, and MARY "CAROL" WEISERT, personal representative of the Estate of JOHN WEISERT, MATTHEW D. ALEXANDER as the Natural Parent and Next Friend of KARLIE SMITH, Deceased, and JEFF BLACKWELL and TAMMI BLACKWELL as Natural Parents and Next Friends of SAMARIA BLACKWELL, Deceased,<br><br>        Plaintiffs,<br><br>v.<br><br>AMERICAN TACTICAL, INC., ANTHONY DICHARIO, JOSEPH CALABRO, SCHMEISSER GMBH, and 365 PLUS D.O.O.<br><br>        Defendants. | Civil Action No. 6:23-cv-06382-EAW |

**DEFENDANTS AMERICAN TACTICAL, INC., ANTHONY DICHARIO,
AND JOSEPH CALABRO'S MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

**SUMMARY OF THE ARGUMENT** ................................................................. 1

**BACKGROUND** ................................................................................................. 2

**STANDARD OF REVIEW** ................................................................................ 4

**ARGUMENT** ..................................................................................................... 5

I.   Venue is Not Proper in the Western District of New York .......................... 5

    A. 28 U.S.C. § 1931(b)(1) ......................................................................... 5

    B. 28 U.S.C. § 1931(b)(2) ......................................................................... 6

II.  Defendant DiChario is Not Subject to Personal Jurisdiction in New York ........................... 8

    A. DiChario is Not Subject to General Personal Jurisdiction in New York Pursuant to C.P.L.R. § 301 ........................................................................ 9

    B. DiChario is Not Subject to Specific Personal Jurisdiction in New York Pursuant to C.P.L.R. § 302 ........................................................................ 11

    C. Subjecting DiChario to Personal Jurisdiction in New York in this Case Would Violate Due Process ........................................................................ 12

III. Plaintiffs' Claims Must Be Immediately Dismissed Pursuant to the PLCAA .................... 13

    A. Purpose of the PLCAA ......................................................................... 13

    B. This Case is a Qualified Civil Liability Action .................................... 14

    C. The Magazine is a Qualified Product ................................................... 14

    D. ATI is a Manufacturer or Seller ........................................................... 16

    E. Plaintiffs' Injuries Resulted from the Criminal Use of a Qualified Product by a Third Party ........................................................................ 16

    F. None of the Narrow Exceptions to the Definition of a Qualified Civil Liability Action are Applicable ........................................................... 17

        1. The Predicate Exception is Inapplicable ....................................... 17

            a. The Predicate Exception Recognizes Only Firearms-Specific Statutes ............ 19

            b. Plaintiffs Lack Standing and Have Not Plausibly Alleged a Violation of Any Firearms-Specific Statute ........................................................................ 21

            c. Plaintiffs Cannot Establish Proximate Cause Even if G.B.L. §§ 349 and 350 Are Viable Predicate Statutes ........................................................................ 23

            d. Plaintiffs Claims Are Derivative ........................................................................ 26

IV.  Choice of Law ........................................................................................... 27

    A. Choice of Law Inquiry .......................................................................... 27

        1. Actual Conflict of Laws Exists ..................................................... 28

        2. Significant Contacts Point to Indiana ............................................ 29

        3. Distinction Between "Regulating Conduct" and "Allocating Loss" ............ 30

4. Application of Loss-Allocation Analysis........................................................ 30

V.   Indiana Statutory Immunity................................................................................ 31

VI.  Failure to State a Claim .................................................................................... 32

    1. The Complaint Fails to Establish Causation............................................... 33

    2. The Complaint Fails to State a Claim Against DiChario and Calabro ........................ 34

    3. Manufacturing and Selling Firearms Is Not a "Public Nuisance" ............................... 35

**CONCLUSION** ........................................................................................................... 37

## TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)...........................................................................8, 11, 12

*Antone v. General Motors Corp., Buick Motors Div.*,
    484 N.Y.S.2d 514 (1984)...........................................................................9

*Anunziatta v. Orkin Exterminating Co., Inc.*,
    180 F. Supp. 2d 353 (N.D.N.Y. 2001).....................................................22

*Ashcroft v. Iqbal.*,
    556 U.S. 662 (2009)........................................................................ *passim*

*Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of
    Texas*, 571 U.S. 49 (2013) ....................................................................5, 8

*Bank of Am. Corp. v. City of Miami*,
    581 U.S. 189 (2017)................................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................32, 34

*Bensusan Rest. Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997).....................................................................12

*Blue Cross v. Philip Morris*,
    3 N.Y.3d 200 (2004) ..............................................................................26

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
    582 U.S. 255 (2017)................................................................................12

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
    123 F. Supp. 2d 245 (D.N.J. 2000) ........................................................36

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ...................................................................36

*City of Gary v. Smith & Wesson*,
    126 N.E.3d 813 (Ind. Ct. App. 2019).................................................21, 31

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 394 (2d Cir. 2008)...................................................................20

*City of N.Y. v. Smokes-Spirits*,
    12 N.Y.3d 616 (2009) ............................................................................23

iii

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415, 420-22 (3d Cir. 2002) ....................................................................36

*Commissioner of Internal Revenue v. Clark*,
    489 U.S. 726 (1989)............................................................................................20

*Control Techniques, Inc. v. Johnson*,
    762 N.E.2d 104 (Ind. 2002) ...............................................................................34

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir.1998) ....................................................................................28

*Daimler A.G. v. Bauman* case. *Sonera Holding B.V. v. Cukurova Holdings A.S.*,
    750 F.3d 221 (2d Cir. 2014).................................................................................10

*Day & Zimmerman, Inc. v. Challoner*,
    423 U.S. 3 (1975)................................................................................................27

*Deal v. United States*,
    508 U.S. 129 (1993)............................................................................................20

*Edwards v. Erie Coach Lines Co.*,
    929 N.Y.S.2d 41 (2011).................................................................................30, 31

*Family Internet, Inc. v. Cybernex, Inc.*,
    1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ..........................................................10

*Fantis Foods, Inc. v. Standard Importing Co. Inc.*,
    425 N.Y.S.2d 783 (1980) .....................................................................................12

*Fast Eddie's v. Hall*,
    688 N.E.2d 1270 (Ind. Ct. App. 1997)...........................................................33, 34

*Feathers v. McLucas*,
    261 N.Y.S.2d 8 (1965) .........................................................................................12

*Forest Park Pictures v. Universal TV. Network, Inc.*,
    683 F.3d 424 (2d Cir.2012) ............................................................................27, 28

*Frintzilas v. DirecTV, LLC*,
    731 F. App'x 71 (2d Cir. July 20, 2018)...............................................................26

*Greenway Plaza Office Park-1, LLC v. Metro Construction Services, Inc.*,
    771 N.Y.S.2d 532 (N.Y. App. Div. 2004) ............................................................34

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)..............................................................................6, 7

*Hamilton v. Beretta USA Corp.*,

96 N.Y.2d 222 (2001) ...................................................................................................37

*Hemi Grp., LLC v. City of New York*,

    559 U.S. 1 (2010).........................................................................................................24

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender*
    *& Company*, 150 N.Y.S.3d 79 (2021) ...........................................................23, 25

*Ileto v. Glock, Inc.*,

    565 F.3d 1126 (9th Cir. 2009) ..................................................................................20

*In re Academy, Ltd.*,

    625 S.W.3d 19 (Tex. 2021).........................................................................................15

*In re Allstate Ins. Co. (Stolarz)*,

    597 N.Y.S.2d 904 (1993) ...........................................................................................28

*In re: Methyl Tertiary Butyl Ether Prods. Liab. Lit.*,

    175 F. Supp. 2d 593 (S.D.N.Y. 2001).......................................................................22

*In re Nassau County Consol. MTBE (Methyl Tertiary Butyl Ether) Prod. Liab.*
    *Lit.*, 918 N.Y.S.2d 399 (Sup. Ct. Nassau Cty. Nov. 4, 2010) ..................................26

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,

    313 U.S. 487 (1941)...................................................................................................27

*KS&E Sports v. Runnels*,

    72 N.E.3d 892 (Ind. 2017) .........................................................................................31

*Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*,

    563 N.Y.S.2d 739 (1990) ...........................................................................................10

*Laufer v. Ostrow*,

    449 N.Y.S.2d 456 (1982) ...........................................................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

    572 U.S. 118 (2014)...................................................................................................25

*Neumeier v. Kuehner*,

    335 N.Y.S.2d 64 (1972) .............................................................................................30

*Ontel Prods., Inc. v. Project Strategies Corp.*,

    899 F. Supp. 1144 (S.D.N.Y. 1999)..........................................................................10

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,

    828 F. Supp. 1114 (S.D.N.Y. 1993)..........................................................................22

*Oswego Laborers' Loc. 214 Pension Fund v. Mar. Midland Bank, N.A.*,

    85 N.Y.2d 20 (1995)..................................................................................................25

*Padula v. Lilarn Props. Corp.*,
   620 N.Y.S.2d 310 (1994) ...............................................................................29, 30

*Penelas v. Arms Tech., Inc.*,
   778 So. 2d 1042 (Fla. Dist. Ct. App. 2001)……………………………………..…36

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
   761 N.Y.S.2d 192 (N.Y. App. Div. 2003)……………………………………………36, 37

*Petitions of Kinsman Transit Co.*,
   388 F.2d 821 (2d Cir. 1968)..........................................................................24

*Prescott v. Slide Fire Sols., LP*,
   341 F. Supp. 3d 1175 (D. Nev. 2018)...........................................................14, 16

*Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.*,
   861 N.Y.S.2d 705 (N.Y. App. Div. 2008) ....................................................34

*Santiago v. NYC Housing Authority*,
   475 N.Y.S.2d 50 (N.Y. App. Div. 1984) .......................................................33

*Schultz v. Boy Scouts of Am.*,
   491 N.Y.S.2d 90 (1985) ................................................................................29, 30

*Singh v. City of New York*,
   195 N.Y.S.3d 429 (2023)...............................................................................25

*State, Civil Rights Com'n v. County Line Park, Inc.*,
   738 N.E.2d 1044 (Ind. 2000) ........................................................................34

*State ex rel. Hunter v. Johnson & Johnson*,
   499 P.3d 719, 725 (Okla. 2021).....................................................................35

*Stutman v. Chemical Bank*,
   95 N.Y.2d 24 (2000) ......................................................................................22

*United States v. Hayes*,
   555 U.S. 415 (2009).......................................................................................21

*Voters for Animal Rights v. D'Artagnan, Inc.*,
   2021 WL 1138017 (E.D.N.Y. Mar. 25, 2021) ..............................................26

**STATUTES**

15 U.S.C. § 7901.............................................................................................. *passim*

15 U.S.C. § 7902.............................................................................................. *passim*

vi

15 U.S.C. § 7903 ............................................................................................. *passim*

27 C.F.R. § 478.11 ......................................................................................... 15

28 U.S.C. § 1391 ............................................................................................. *passim*

28 U.S.C. § 1406 ............................................................................................. 5

Fed.R.Civ.P. 8 ................................................................................................. 33

Fed.R.Civ.P. 12 ............................................................................................... 33

Ind. Code § 32-30-6-6 ..................................................................................... 24, 25

Ind. Code § 34-12-3 *et seq.* ........................................................................... *passim*

Ind. Code § 34-23-1 *et seq.* ........................................................................... 14, 16, 17

N.Y. C.P.L.R. § 301 ........................................................................................ 8, 9, 11

N.Y. C.P.L.R. § 302 ........................................................................................ 8, 9, 11, 12

N.Y. Est. Powers & Trusts Law § 5-4.1 ......................................................... 4, 14

N.Y. Est. Powers & Trusts Law § 5-4.3 ......................................................... 29, 31

N.Y. Gen. Bus. Law § 349 .............................................................................. *passim*

N.Y. Gen. Bus. Law § 350 .............................................................................. *passim*

N.Y. Penal Law § 265.00(23) .......................................................................... 4

N.Y. Penal Law § 265.02(8) ............................................................................ 4

## OTHER AUTHORITIES

151 CONG. REC. E2162-63 (2005) .................................................................. 21

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................. 19

Timothy D. Lytton, *Tort Claims against Gun Manufacturers for Crime-Related Injuries: Defining a Suitable Role for the Tort System in Regulating the Firearms Industry*, 65 Mo. L. Rev. at 6-50 2000). ................................................ 19

## SUMMARY OF THE ARGUMENT

Plaintiffs, including the representatives of the estates of six people murdered during an April 15, 2021, criminal shooting at a FedEx facility in Indianapolis, Indiana, improperly seek to hold American Tactical, Inc. ("ATI"), the U.S. importer of one of the magazines allegedly used by the shooter, as well as its President Anthony DiChario, and one of its employees, Joseph Calabro, liable for their damages. Plaintiffs' claims are improper and should be dismissed for numerous reasons.

*First*, the case should be dismissed because venue is not proper in the Western District of New York. Not all the Defendants are residents of this District and a substantial part of the events giving rise to the incident occurred in the Southern District of Indiana. This case should therefore be dismissed because venue is only proper in the Southern District of Indiana.

*Second*, the claims against DiChario should be dismissed for lack of personal jurisdiction because the C.P.L.R. does not authorize the exercise of personal jurisdiction over him as a resident of the State of South Carolina and the exercise of personal jurisdiction over him in this Court would violate due process - Plaintiffs are not residents of New York, were not injured in New York, and all actions on which they base their claims occurred in other states.

*Third*, Plaintiffs' claims are barred by a federal immunity statute, the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-03, which prohibits claims seeking damages and other relief against federally licensed firearms manufacturers and sellers resulting from the criminal or unlawful misuse of firearms, ammunition, and component parts of firearms by third parties.

*Fourth*, New York's conflict of laws rules direct the application of the substantive law of Indiana to Plaintiffs' claims; and Indiana has its own immunity statute, Ind. Code § 34-12-3, that mandates the dismissal of Plaintiffs' claims because it prohibits the recovery of damages and other relief resulting from the criminal or unlawful misuse of a firearm or ammunition by a third party.

*Fifth*, in addition to the federal and state immunity statutes barring all of Plaintiffs' causes of action, they should also be dismissed for lack of causation as a matter of law.

*Sixth*, the individual claims against DiChario and Calabro should be dismissed because there are no factual allegations establishing that they personally committed a tortious act that could serve as a basis to hold them individually liable.

*Seventh*, Plaintiffs' nuisance-based causes of action must be dismissed based on precedent that such claims are untenable related to the sale of lawful products.

## BACKGROUND

On April 15, 2021, thirteen people were shot with eight killed during an attack by a 19-year-old male ("Shooter").[1] *See* ECF Doc. 10, Am. Compl. ¶¶ 16-18. The Shooter allegedly used two semi-automatic "AR-15 style" firearms, and numerous magazines including a "60-round Schmeisser" magazine ("Magazine") to commit his crimes. *Id.* ¶¶ 16-17.

Plaintiffs, including the representatives of six of the people murdered by the Shooter, commenced this action on April 14, 2023.[2]   The Amended Complaint ("Complaint") names numerous defendants, including ATI, ATI's President Anthony DiChario, and one of its

---

[1] To avoid creating further notoriety for the murderer, his name will not be used in this motion.
[2] Another lawsuit arising from the same shooting and naming the same defendants was filed, *Bains v. American Tactical, Inc., et al.*, No. 6:23-cv-06208-EAW, and is also pending in this Court.

employees, Joseph Calabro ("ATI Defendants"). Am. Compl. ¶¶ 42-49. ATI is a federal firearms licensee ("FFL") and an "importer, manufacturer, and seller of firearms, ammunition, and accessories," with its principal place of business in South Carolina. *Id.* ¶¶ 42-43. DiChario is alleged to be the "President of Defendant American Tactical." *Id.* ¶ 46. The sole basis for claims against him personally is that he "is aware of or ultimately approves American Tactical's marketing." *Id.* Calabro is alleged to be "the Director of Marketing and Purchasing for American Tactical." *Id.* ¶ 48. The sole basis for claims against him personally is that "he oversees and directs American Tactical's marketing, including on its social media platforms." *Id.*

In their Motion to Transfer Venue, Plaintiffs' basis for alleging that venue is proper in this district is an allegation that "venue is proper in the Southern District of Indiana and venue is also proper in the Western District of New York where the first-filed *Bains* action is pending." *See* ECF Doc. 13. In their Amended Complaint ("Complaint"), the sole basis for personal jurisdiction of Defendant DiChario is an allegation that he is "a citizen of the State of New York." Am. Compl ¶ 47. Mr. DiChario, however, is not a citizen of New York State, and there is no personal jurisdiction over him in this Court. *See* October 28, 2023 Declaration of Anthony DiChario, attached hereto as Exhibit A.

Indiana law does not restrict the manufacture, sale or possession of firearm magazines or "ammunition feeding devices" based on the number of cartridges they can contain. New York, however, prohibits the possession of a magazine that has the capacity to hold more than ten rounds of ammunition. *See* N.Y. Penal Law §§ 265.00(23) and 265.02(8).

Plaintiff Gurinder Johal, as personal representative of the Estate of Amarjeet Johal, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance." Am Compl. ¶¶ 153-218.

3

Plaintiff Diljot Sekhon, as personal representative of the Estate of Amarjit Sekhon, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance."  Am Compl. ¶¶ 219-83.

Plaintiff Jaspreet Sekhon, as personal representative of the Estate of Jasvinder Kaur, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance."  Am Compl. ¶¶ 284-348.

Plaintiff Mary "Carol" Weisert, as personal representative of the Estate of John Weisert, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance."  Am Compl. ¶¶ 349-411.

Plaintiff Matthew D. Alexander, as personal representative of the Estate of Karlie Smith, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance."  Am Compl. ¶¶ 412-76.

Plaintiff Jeff and Tammi Blackwell, as personal representative of the Estate of Samaria Blackwell, asserts causes of action against the ATI Defendants for: negligence; wrongful death; public nuisance; and "wrongful death in re: public nuisance."  Am Compl. ¶¶ 477-540.

As will be shown below, all causes of action brought against the ATI Defendants must be dismissed.

## STANDARD OF REVIEW

On a motion to dismiss, the court must accept the alleged facts as true but need not accept "conclusory statements" unsupported by any concrete factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To "unlock the doors of discovery," the allegations must show that the defendants' liability is actually "plausible," not merely "conceivable." *Id*. at 678-80. If the facts alleged are "merely consistent with" liability, then the case must be dismissed. *Id*. at 678.

<u>**ARGUMENT**</u>

**I.** <u>**Venue is Not Proper in the Western District of New York**</u>

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on the basis that venue is improper in the Western District of New York.  Pursuant to 28 U.S.C. § 1406(a), the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Venue is proper if the requirements of 28 U.S.C. § 1391(b) are satisfied; if they are not, the case was filed in the wrong district for purposes of venue.  *Atlantic Marine Constr. Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 55-59 (2013).

Venue is governed by 28 U.S.C. § 1391(b), which states:

A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiffs make no attempt to even cite to the venue statute in the Complaint, or plead that one of its three requirements are satisfied.

**A.  28 U.S.C. § 1931(b)(1)**

Venue is not proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because DiChario is not a resident of New York.  For purposes of residency, a natural person is "deemed to reside in the judicial district in which that person is domiciled." *Id.* § 1391(c)(1).  DiChario is a citizen and resident of South Carolina, and has resided in South Carolina with the intention to permanently make that state his home since 2013.  *Id.* ¶ 10. As such, DiChario is considered to be domiciled in South Carolina and a resident of that district for purposes of venue.

## B.  28 U.S.C. § 1931(b)(2)

Venue pursuant to 28 U.S.C. § 1391(b)(2) can be proper in "multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts . . . ." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005).  Based on the allegations in the Complaint, however, venue is only proper in the U.S. District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this case all occurred in that district.

The shooting took place in Indianapolis, Indiana, which is located in the Southern District of Indiana.  Am. Compl. ¶ 16.  At the time of the incident, Amarjeet Johal, Amarjit Sekhon, Jasvinder Kaur, John Weisert, Karlie Smith, and Samaria Blackwell were all employed at a FedEx facility in Indianapolis, Indiana.  *Id.* ¶¶ 20-22.  At the time of the incident, all Plaintiffs were residents of Hendricks, Johnson, or Marion County, Indiana.  *Id.* ¶¶ 34-37.  All of these counties are located in the Indianapolis Division of the Southern District of Indiana.[3]  The Shooter was also a resident of Indianapolis and a former employee of the same FedEx facility in Indianapolis at which the shooting occurred.  He presumably purchased the Magazine, as well as

---

3 *See* U.S. District Court for the Southern District of Indiana Plan for the Random Selection of Grand and Petit Jurors at 1 (https://www.insd.uscourts.gov/sites/insd/files/general-ordes/Jury%20Plan%20Final%20February%202017%20-%20Signed.pdf).

the rifles used in the shooting, in the Southern District of Indiana.  Accordingly, venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2).  In fact, the Complaint was originally filed in the U.S. District Court for the Southern District of Indiana, with an allegation that venue was proper in that district pursuant to 28 U.S.C. § 1391(b)(2) on the basis that a "substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in that district." Am. Compl. ¶ 55.

In contrast, no "substantial part of the events or omissions giving rise" to the claims in this action occurred in the Western District of New York.  In fact, based on the allegations that have not been controverted by the DiChario Declaration, the only connections this case has to the State of New York is that ATI is incorporated in New York, and Calabro is a citizen of New York and resident of this district.  Am. Compl. ¶¶ 38, 45, 50, 53.  The Second Circuit Court of Appeals specifically "caution[ed] district judges to take seriously the adjective 'substantial," explaining that courts are "required to construe the venue statute strictly."  *Gulf Ins.*, 417 F.3d at 357.  "That means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Id.* (emphasis in original).  Based on the above, venue is not proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because no "significant events or omissions material" to Plaintiffs' claims occurred in the Western District of New York.

Because this action could properly be brought in the U.S. District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2), venue in any other district in which any defendant is subject to the court's personal jurisdiction with respect to this case pursuant to Section 1391(b)(3) is improper.  As succinctly stated by a unanimous Supreme Court: "When venue is challenged, the court must determine whether the case falls within one of the three

categories set out in § 1391(b).  If it does, venue is proper; if it does not, venue is improper, and the case <u>must be dismissed</u> or transferred under § 1406(a)."  *Atlantic Marine*, 571 U.S. at 56 (emphasis added).  Defendants have challenged venue, and venue is not proper in the Western District of New York pursuant 28 U.S.C. § 1391(b).  Accordingly, this case must be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.

## II.  DiChario is Not Subject to Personal Jurisdiction in New York

In their Complaint, Plaintiffs' basis that Defendant DiChario is subject to personal jurisdiction in New York is because he is "upon information and belief, a resident of this district."  Am. Compl. ¶ 52.  DiChario is a resident of South Carolina, however, and has resided in South Carolina since 2013.  DiChario Decl. ¶ 10.  Plaintiffs do not attempt to identify the specific provision in the C.P.L.R. that they allege authorizes the exercise of personal jurisdiction over DiChario in this case.  As detailed below, none of the provisions in the C.P.L.R. authorize this Court to exercise personal jurisdiction over DiChario in New York based on the claims asserted in this case.  Further, even assuming New York law provided a basis to exercise personal jurisdiction over DiChario, doing so in connection with the claims in this case would violate his right to due process.

Federal courts sitting in diversity apply the law of the forum state to determine whether a defendant is subject to personal jurisdiction in that state.  *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).  New York authorizes the exercise of personal jurisdiction pursuant to two provisions.  First, C.P.L.R. § 301 provides that a "court may exercise such jurisdiction over persons, property, or status as might have been exercised" before the enactment of the long-arm statute.  Second, C.P.L.R. § 302 authorizes the exercise of personal jurisdiction pursuant to the long-arm statute.

**A. DiChario is Not Subject to General Personal Jurisdiction in New York Pursuant to C.P.L.R. § 301**

The traditional grounds on which an individual was subject to personal jurisdiction that remain viable under Section 301 are service of process while present in New York and domicile in New York.  C.P.L.R. § 301 Practice Commentaries C301:1 ("CPLR 301 was intended to make clear that the advent of 'long-arm' jurisdiction in CPLR 302 did not supersede or limit any then-existing bases of jurisdiction recognized by statute or caselaw"); C301:2 ("Service of process on the defendant while she is present in New York is a time-honored basis for the exercise of in personam jurisdiction"); and C301:7 ("The defendant who is a New York domiciliary at the time the action is commenced may be served with process anywhere (either within or outside New York), thereby conferring in personam jurisdiction.").

As confirmed by the affidavits of service filed in this case, the service in New York on September 1, 2023 was not personally made on DiChario, but rather on an office manager at a non-party business in New York, with the statutory requirements for service on an individual crossed-out and provisions applicable to the service on a business handwritten.  ECF Doc. No. 17.  The only service that was personally made on DiChario was on September 6, 2023, in South Carolina.  Accordingly, there is no basis to allege that DiChario is subject to personal jurisdiction in New York based on service of process while physically present in New York.  DiChario has been a resident and domiciliary of South Carolina since 2013, and does not maintain a residence in New York.  DiChario Decl. ¶¶ 10, 12. There is accordingly no support to subject him to personal jurisdiction in New York on the basis that he is domiciled in that state.  *Antone v. General Motors Corp., Buick Motors Div.*, 484 N.Y.S.2d 514, 517 (1984) ("Establishment of a domicile in a State generally requires a physical presence in the State and an intention to make the State a permanent home.").

9

A corporation could previously be subjected to personal jurisdiction in New York pursuant to Section 301 on the basis that it "has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 563 N.Y.S.2d 739, 740 (1990). Such support for jurisdiction is no longer valid based on the Supreme Court's decision in the *Daimler A.G. v. Bauman* case. *Sonera Holding B.V. v. Cukurova Holdings A.S.*, 750 F.3d 221, 224-25 (2d Cir. 2014). In *Daimler*, the Supreme Court held that a corporation may only be subjected to general personal jurisdiction in the state(s) in which it is incorporated and has its principal place of business. 571 U.S. 117, 137-39 (2014).

Even if "doing business" pursuant to Section 301 was still a viable basis to exercise general jurisdiction over a foreign corporation, it provides no basis to exercise personal jurisdiction over the president of such a corporation. *Laufer v. Ostrow*, 449 N.Y.S.2d 456, (1982) (holding that the president of a corporation is not subject to personal jurisdiction pursuant to Section 301 "unless he is doing business in [New York] individually"). General personal jurisdiction cannot be exercised over the president of a corporation on the basis that he:

> likely *possessed authority* to direct all the activities that gave rise to [a lawsuit]. If that were the case, the President of every company would be subject to jurisdiction in New York based on activities with which he or she had no personal involvement and over which he or she exercised no decision making authority.

*Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148-49 (S.D.N.Y. 1999) (emphasis in original). *See also Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637(RWS), 1999 WL 796177, at *4 (S.D.N.Y. Oct. 6, 1999) ("The mere fact that a corporation is subject to jurisdiction under section 301 does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or

conducted business in New York."). Based on the above, there is no basis for this Court to exercise general personal jurisdiction over DiChario pursuant to C.P.L.R. § 301.

**B. DiChario is Not Subject to Specific Personal Jurisdiction in New York Pursuant to C.P.L.R. § 302**

The second basis on which New York courts are authorized to exercise personal jurisdiction is pursuant to C.P.L.R. § 302(a), which provides that as to a "cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent" meets one of four specified criteria. The sole actions by DiChario alleged in the Complaint are that he "is aware of or ultimately approves [ATI's] marketing. As president, he has the ultimate authority to influence and direct [ATI's] marketing strategy and to cease running specific advertisements or other content published by [ATI] on its social media platforms."  Am. Compl. ¶ 46.  These allegations are not sufficient to establish personal jurisdiction pursuant to any of the four provisions of Section 302(a).

1.  DiChario is Not Subject to Personal Jurisdiction Pursuant to C.P.L.R. § 302(a)(1)

For personal jurisdiction pursuant to Section 302(a)(1), plaintiff's cause of action must arise from the defendant's transaction of business in New York.  *Agency Rent A Car*, 98 F.3d at 29.  A claim only arises from defendant's transaction of business in New York if there is a "substantial nexus between the business transacted and the cause of action sued upon."  *Id.* at 31 (citation and quotation marks omitted).  As detailed in the declaration of DiChario, his actions in connection with ATI were all taken in South Carolina.  He did not transact any business in New York, and therefore there is no substantial nexus to the causes of action alleged against him.

2.  DiChario is Not Subject to Personal Jurisdiction Pursuant to C.P.L.R. § 302(a)(2)

11

Jurisdiction pursuant to C.P.L.R. § 302(a)(2), applies only to "tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). *See also Feathers v. McLucas*, 261 N.Y.S.2d 8, 20-24 (1965). The alleged acts by DiChario would have occurred while he was in South Carolina in connection with his employment at ATI. As a result, the requirements of Section 302(a)(2) are not satisfied.

    3.  <u>DiChario is Not Subject to Personal Jurisdiction Pursuant to C.P.L.R. § 302(a)(3)</u>

C.P.L.R. § 302(a)(3) authorizes personal jurisdiction only when the plaintiffs are injured in New York based on defendant's tortious act in another state. *Bensusan*, 126 F.3d at 29; *Fantis Foods, Inc. v. Standard Importing Co. Inc.*, 425 N.Y.S.2d 783, 786-87 (1980) (Section 302(a)(3) requires an injury to plaintiff in New York.). Plaintiffs were injured in Indiana, not New York, and therefore Section 302(a)(3) cannot apply.

    4.  <u>DiChario is Not Subject to Personal Jurisdiction Pursuant to C.P.L.R. § 302(a)(4)</u>

Finally, personal jurisdiction pursuant to C.P.L.R. § 302(a)(4) applies only to a cause of action arising from defendant's ownership, use or possession of real property in New York. The Complaint provides no support for jurisdiction pursuant to Section 302(a)(4). For the above reasons, New York law does not authorize the exercise of personal jurisdiction over DiChario.

**C. Subjecting DiChario to Personal Jurisdiction in New York in this Case Would Violate Due Process**

Even if New York law authorized the exercise of personal jurisdiction over DiChario in this case, it would be barred by the Due Process Clause. The Supreme Court has held that the Due Process Clause does not permit the exercise of personal jurisdiction over a defendant when the plaintiffs are not residents of the forum state, do not claim to have suffered harm in that state, and all "conduct giving rise to [their] claims occurred elsewhere." *Bristol-Myers Squibb Co. v.*

*Superior Court of California, San Francisco County*, 582 U.S. 255, 265 (2017) ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").

None of the Plaintiffs are residents of New York or claim that they have suffered any harm in New York – or even that they have any connection to New York.  All of the alleged conduct giving rise to Plaintiffs' claims against DiChario occurred in South Carolina and Indiana.  Due process therefore prohibits the exercise of personal jurisdiction over DiChario in New York in connection with the claims in this case.

### III. PLAINTIFFS' CLAIMS MUST BE IMMEDIATELY DISMISSED PURSUANT TO THE PLCAA

#### A. Purpose of the PLCAA

The PLCAA, which was enacted on October 26, 2005, prohibits the institution of a "qualified civil liability action" in any state or federal court. 15 U.S.C. §§ 7902(a). One of the stated purposes of the PLCAA is to "prohibit causes of action against manufacturers . . . of firearms or ammunition products … for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1). The following are among several explicit findings that Congress made regarding the necessity to enact the PLCAA:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws.  Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

13

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

*Id.* §§ 7901(a)(3)-(5). Based upon the above findings, and to achieve the above purpose, the PLCAA prohibits the filing of a qualified civil liability action in any state or federal court.

### B. This Case is a Qualified Civil Liability Action

As defined by the PLCAA, and subject to six limited exceptions, a "qualified civil liability action" is a "civil action . . . brought by any person against a manufacturer or seller . . . of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief, or penalties or other relief resulting from the criminal or unlawful misuse of a qualified product by . . . a third party . . . ." 15 U.S.C. § 7903(5)(A). Based on the allegations in the Complaint, this case is a civil proceeding brought by persons (Plaintiffs) against a manufacturer or seller (the ATI Defendants) of a qualified product (the Magazine, a component part of a firearm) for damages resulting from the criminal or unlawful misuse of a qualified product (the intentional shooting of Plaintiffs) by a third party (the Shooter).

### C. The Magazine is a Qualified Product

The PLCAA defines a "qualified product" as a firearm, ammunition, "or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4) (emphasis added). A "component part" of a firearm is one that is integral to its proper function. *See Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018) (holding that an aftermarket stock is a qualified product as defined by the PLCAA). Just like a trigger, bolt, hammer, or barrel, a magazine for a semi-automatic firearm is

14

unquestionably a component part of such a firearm. *See In re Academy, Ltd.*, 625 S.W.3d 19, 29 (Tex. 2021) ("As explained, both firearms and magazines (along with other component parts) are 'qualified products' subject to the PLCAA's general prohibition against qualified civil liability actions…"). The ATF defines a "semiautomatic rifle" as "any repeating rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge." *See* 27 C.F.R. § 478.11. Without a magazine, there is no "next round" available to be chambered, and the "semi-automatic" design feature of such a rifle will not function; the rifle simply becomes a single shot rifle. In *Prescott*, the court found that "a 'stock' is a component part" because it "is an integral component of a rifle as it permits the firearm to be fired from the shoulder."  341 F. Supp. 3d at 1189. The court further relied upon ATF's definition and guidebook to support its conclusion. Just like there is no "rifle" without a "stock," there is no "semi-automatic" function without a magazine.

Plaintiffs claim that the magazine is an "accessory used to store and feed ammunition in semi-automatic and automatic guns." Am. Compl. ¶ 3. However, use of the term "accessory" belies its integral function with the rifle. Since the magazine "feeds" ammunition into the rifle, it clearly cannot function properly without it. If you remove the tires from a car, you can still start the motor, listen to the radio and put on the air conditioner, but you cannot travel any distance. Removal of the tires has extinguished the primary purpose of the vehicle, thus tires are component parts.  If you remove the magazine from an unloaded rifle, you can aim it and pull the trigger, but it will not discharge a round. Removal of the magazine has extinguished the primary purpose of the rifle, thus a magazine must be a component part. Further, any argument that the Magazine does not qualify as a component part because it is an "after-market" replacement, has

15

been addressed and rejected by the *Prescott* court. There, the court held that the facts that "bump stocks enhance a rifle's operation and are installed after purchase by an end user do not negate the fact that bump stocks are substituted in for the original stock rendering them essential units." 341 F. Supp. 3d at 1189.  The same holds true here, the Magazine was substituted for an original component part rendering it an "essential unit" of the rifle.

### D.  ATI is a Manufacturer or Seller

The PLCAA defines a seller, with respect to a qualified product (i.e., a component part of a firearm such as the magazine) as:

> (A) an importer (as defined in section 921(a)(9) of title 18) who is engaged in the business as such an importer in interstate or foreign commerce and who is licensed to engage in business as such an importer under chapter 44 of title 18;
>
> (B) a dealer (as defined in section 921(a)(11) of title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of title 18; or
>
> (C) a person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of title 18) in interstate or foreign commerce at the wholesale or retail level.

15 U.S.C. § 7903(6). Plaintiffs alleged that ATI is an "importer, manufacturer, and seller of firearms, ammunition, and accessories." Am. Compl. ¶ 43. As such, ATI is a "manufacturer or seller" pursuant to the PLCAA.

### E.  Plaintiffs' Injuries Resulted from the Criminal Use of a Qualified Product by a Third Party

On April 15, 2021, six Plaintiffs were murdered through the intentional and criminal acts of the Shooter. Am. Compl. ¶¶ 16-18. The Shooter used two semi-automatic "AR-15 style" firearms, one of which was allegedly equipped with the Magazine. *Id.* ¶¶ 16-17, 43. As such, Plaintiffs' damages all arise out of the criminal use of qualified products – firearms, ammunition, and component parts of a firearm – including the Magazine, by a third party.

16

**F.  None of the Narrow Exceptions to the Definition of a Qualified Civil Liability Action are Applicable**

There are six narrow categories of claims that the PLCAA excludes from the definition of a qualified civil liability action and therefore does not bar.  *See* 15 U.S.C. § 7903(5)(A). However, there is no exception for Plaintiffs' common law claims, including their general negligence, public nuisance, and negligence infliction of emotional distress claims.  Based on the allegations in the Complaint, the only exception that could potentially be applicable to Plaintiffs' claims is the exception for:

> an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including –
>
> > (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or
> >
> > (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18.

*Id.* § 7903(5)(A)(iii) (commonly referred to as the "predicate exception"). This exception, however, does not apply to the ATI Defendants for multiple reasons.

**1.  The Predicate Exception is Inapplicable**

The so-called "predicate exception" allows a manufacturer or seller of firearms to be sued if it "knowingly violated a State or Federal statute <u>applicable to the sale or marketing of</u>

[firearms, ammunition, or component parts for firearms of ammunition], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). Plaintiffs cite to New York's General Business Law Sections 349 and 350 and Indiana Code § 32-30-6-6 as the only statutes allegedly violated by the ATI Defendants. Am. Compl., ¶¶ 96-97.  However, none are sufficient to implicate the predicate exception. First, New York's General Business Law Sections 349 and 350 ("NYUTPA") cannot apply to this case because there are no allegations that ATI sold the Magazine to someone in New York, or that the Magazine was ever physically present in New York.  As such there is no possible way that New York's consumer fraud statute could be implicated.

Moreover, NYUPTA is a generalized consumer protection statute and Indiana Code § 32-30-6-6 is a codified nuisance statute, violations of which do not qualify as predicate acts for purposes of the PLCAA. The PLCAA specifically identifies the types of firearm-specific statutes Congress considered "applicable to" the sale and marketing of firearms when it enacted the law. It identifies laws:

- Requiring manufacturers and sellers to keep "record[s] . . . with respect to [firearms]." 15 U.S.C. § 7903(5)(A)(iii)(I).

- Prohibiting manufacturers and sellers from aiding, abetting, or conspiring with any person in making a "false or fictitious . . . statement" that is "material to the lawfulness of the sale or other disposition of a [firearm]." *Id*.

- Prohibiting manufacturers and sellers from aiding, abetting, or conspiring with anyone "to sell or otherwise dispose of a [firearm], knowing, or having reasonable cause to believe, that the actual buyer of the [firearm] was prohibited from possessing or receiving a firearm." *Id*. § 7903(5)(A)(iii)(II).

To satisfy the predicate exception, an action must not only be based on an "applicable" firearms statute, but a plaintiff must also show that a defendant knowingly violated a state or federal statute that "appli[es]" specifically to the "sale or marketing of [firearms, ammunition, or

component parts for firearms of ammunition]." 15 U.S.C. § 7903(5)(A)(iii). The PLCAA does not permit claims to survive based on generally applicable laws, such as public nuisance and consumer-protection statutes, because those are the types of claims that the PLCAA was enacted to foreclose.

### a)  The Predicate Exception Recognizes Only Firearms-Specific Statutes

The plain text, structure, and context of the PLCAA show that the predicate exception applies only to claims based on firearms-specific laws, not laws of general applicability. Read in isolation, there are only two textually permissible readings of a "statute applicable to the sale or marketing of" firearms. 15 U.S.C. § 7903(5)(A)(iii). First, it could refer broadly to all laws that are "[c]apable of being applied" to firearms sales and marketing. BLACK'S LAW DICTIONARY (11th ed. 2019). Or, more narrowly, the term "applicable" could mean—especially in reference to "a rule, regulation, law, etc."—"affecting or relating to a particular person, group, or situation; having direct relevance." *Id*. On this reading, the predicate exception applies only to claims under laws that specifically regulate firearms *in particular*.

A broad reading of the predicate exception would allow precisely the type of claim that Congress sought to bar when it enacted the PLCAA. Congress noted with disapproval that various "[l]awsuits ha[d] been commenced" seeking to hold firearms companies liable for "harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3). The lawsuits that had been commenced at the time were based on generally applicable statutes prohibiting "negligent marketing," "public nuisance," and "deceptive trade practices." *See* Timothy D. Lytton, *Tort Claims against Gun Manufacturers for Crime-Related Injuries: Defining a Suitable Role for the Tort System in Regulating the Firearms Industry*, 65 Mo. L. Rev. at 6-50 2000).

When the predicate exception is read in context, the narrower meaning is clearly the right one. It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). Here, all of the relevant context—including the statutory structure, purpose, and history—confirm that the predicate exception is narrowly limited to firearms-specific laws.

The Second Circuit reached the conclusion that the predicate exception applies only to statutes specifically regulating the sale or marketing of firearms, explaining that the predicate exception cannot refer to all general laws that are merely "capable of being applied," because that would make the exception "far too[]broad." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 394, 403 (2d Cir. 2008). It "would allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by firearms that were lawfully distributed into primary markets." *Id*. Avoiding this type of nonsensical result is exactly why the Supreme Court has instructed courts to "read [statutory] exception[s] narrowly in order to preserve the primary operation of" the general rule. *Commissioner of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989).

One lawsuit that Congress focused on, in particular, involved statutory claims for public nuisance and negligence in California. *See Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) (noting that Congress considered "this very case as the type of case they meant the PLCAA to preempt"); *see, e.g.*, 151 CONG. REC. E2162-63 (2005) (statement of Rep. Stearns) (describing as a "predatory lawsuit" the "case of *Ileto v. Glock*"); *id.* 19135 (statement of Sen. Craig) ("Another example of a lawsuit captured by this bill is the case of *Ileto v. Glock*."). In *Ileto*, a case arising out of a highly publicized mass shooting, plaintiffs argued that California's statutory tort laws

sufficed as predicate statutes to avoid dismissal based on the PLCAA. 565 F.3d at 1136. The Ninth Circuit disagreed and concluded that the predicate exception cannot sensibly be interpreted to "cover[] all state statutes that *could be applied* to the sale or marketing of firearms." *Id.* at 1135-36 (emphasis in original). That would violate the cardinal rule that statutory provisions should not be read in a way that "would frustrate Congress' manifest purpose." *United States v. Hayes*, 555 U.S. 415, 427 (2009).

Thus, based on binding precedent from the Second Circuit in *City of New York*, as well the well-reasoned opinion from the Ninth Circuit in *Ileto*, this Court must find that New York's General Business Law Sections 349 and 350 and Indiana Code § 32-306-6 cannot be considered firearm specific statutes sufficient to meet the predicate exception.[4]

### b) Plaintiffs Lack Standing and Have Not Plausibly Alleged a Violation of Any Firearms-Specific Statute

If this Court finds that New York's General Business Law Sections 349 and 350 are "firearm specific" sufficient to state a claim under the predicate exception, they still fail to fall within the PLCAA's predicate exception because these sections only prohibit "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service <u>in this state</u>[.] ..." G.B.L. § 349(a) (emphasis added).

Initially, ATI's principal place of business is in South Carolina. Am. Compl. ¶ 42. There is no allegation in the Complaint of any connection between the Magazine and New York. Thus,

---

[4] Defendants acknowledge that there is non-binding precedent in Indiana from an intermediate state appellate court holding that Indiana Code § 32-306-6 does suffice to meet the predicate exception. *City of Gary v. Smith & Wesson*, 126 N.E.3d 813, 832-34 (Ind. App. Ct. 2019). But that decision was based on a pre-PLCAA decision by the Indiana Supreme Court in that case finding that Section 32-306-6 was applicable to the sale of firearms.

by the plain language of Sections 349 and 350, they do not apply to the claims against the ATI Defendants based on the lack of a connection to New York.

Even if G.B.L. §§ 349 and 350 are somehow appliable to the Magazine, Plaintiffs still fail to state of cause of action under either statute. G.B.L. §§ 349 and 350 seek to prohibit "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.] ..." G.B.L. § 349(a); *see also Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1128-29 (S.D.N.Y. 1993). Courts have articulated the following elements necessary to establish claims for both deceptive practices under G.B.L. § 349 and deceptive advertising under G.B.L. § 350:

> (i)  that defendants engaged in conduct that was misleading in a material respect;

> (ii) the deceptive conduct was "consumer oriented"; and

> (ii) that the plaintiff was injured "by reason of" defendant's conduct.

*See Ortho Pharm.*, 828 F. Supp. at 1128-29.

"A material misrepresentation is made when a statement 'is likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Anunziatta v. Orkin Exterminating Co., Inc.*, 180 F. Supp. 2d 353, 361 (N.D.N.Y. 2001) (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 30 (2000)). "The test is an objective one…[w]hether a representation is material and whether it is likely to mislead a reasonable consumer may be determined as a matter of law." *Id.* "To satisfy the 'by reason of' requirement, plaintiff[] need[s] only allege that the defendant['s] material deceptive act[s] caused the injury." *In re: Methyl Tertiary Butyl Ether Prods. Liab. Lit.*, 175 F. Supp. 2d 593, 631 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).

A plaintiff seeking recovery under these statutes must show a causal connection between the defendant's alleged conduct and the plaintiff's injury. *In re: Methyl Tertiary Butyl Ether*

*Prods. Liab. Lit.*, 175 F. Supp. 2d at 631.    Here, Plaintiffs allege that ATI "marketed and designed the magazine in a way that foreseeably attracted and enabled dangerous individuals like the shooter." Am. Compl. ¶¶ 101-118. Whether or not this is accurate, or whether a finder of fact would find that ATI's advertising of the Magazine was misleading in this regard, any such finding cannot be causally related to the Shooter using rifles and the Magazine in one of them to intentionally shoot and murder multiple people. "But-for cause" is the best Plaintiffs can allege in this situation, but it is insufficient to state a claim for violation of G.B.L. §§ 349 or 350. *City of N.Y. v. Smokes-Spirits*, 12 N.Y.3d 616, 618-19 (2009). Therefore, Plaintiffs lack standing to bring claims under G.B.L. §§ 349 or 350.

      c)   **Plaintiffs Cannot Establish Proximate Cause Even if G.B.L. §§ 349 and 350 Are Viable Predicate Statutes**

The predicate exception not only requires that a firearm-specific statute be knowingly violated, but also that the alleged violation be a proximate cause of the harm. Here, Plaintiffs claim that the ATI Defendants had a duty "to market and advertise their products responsibly and not falsely or deceptively in violation of" Sections 349 and 350.  Am. Compl.  ¶ 97.  Plaintiffs then recite a "wish list" of actions that they believe should be instituted regarding the sale of this qualified product, but without any citation to a law, rule or regulation establishing that any of the listed action items are required in any jurisdiction. *Id.* at ¶ 98.  Further, the focus of G.B.L. §§ 349 and 350 is on "the seller's deception and its subsequent impact on consumer decision-making, not on the consumer's ultimate use of the product." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 150 N.Y.S.3d 79, 85 (2021). Plaintiffs allege no consumer decision-making based on ATI's advertising, whether by themselves, or by the Shooter. The closest they come are allegations that an "individual like the Shooter" may be influenced by certain types of advertising, but no allegations of false or deceptive advertising.

Am. Compl. ¶¶ 98i, 102, 113. Plaintiffs do make a general allegation that the "Shooter fell within the dangerous category of consumers targeted by Defendants' extreme and deceptive marketing tactics," but never articulate specifics as to how such marketing was actually deceptive. *Id.* at ¶ 119. This conclusory statement is insufficient to plead this claim. On a motion to dismiss, the court must accept the alleged facts as true, but need not accept "conclusory statements" unsupported by any concrete factual allegations. *Ashcroft*, 556 U.S. at 678.

When Congress incorporates "proximate cause" into a federal statute, as it has done in the PLCAA, it has a "well established" meaning that allows liability only if "the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 201 (2017) (citation and quotation marks omitted). Thus, since Congress incorporated a proximate-cause requirement into the predicate exception, it does not allow any claim unless the plaintiff can show a "close connection" between the alleged harm and the violation of the predicate statute. *Id.*

The Supreme Court has held, "[P]roximate cause 'generally bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct.'" *Bank of Am.*, 581 U.S. at 202. The federal remoteness doctrine applies under all types of federal laws[5] and it has firm grounding in the common law. *See, e.g.*, *Petitions of Kinsman Transit Co.*, 388 F.2d 821, 825 & n.8 (2d Cir. 1968) (even where harm "foreseeable," causal link "too tenuous and remote to permit recovery"). Further, the Supreme Court has recognized that proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v.*

---

[5] *Bank of Am.*, 581 U.S. at 201 (Fair Housing Act); *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 532 (1983) (Sherman Act); *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 52 (1st Cir. 1985) (admiralty); *Fields v. Twitter, Inc.*, 881 F.3d 739, 746 (9th Cir. 2018) (Anti-Terrorism Act).

*City of New York*, 559 U.S. 1, 9 (2010). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id*. And "[t]he general tendency of the law, in regard to damages at least, is *not to go beyond the first step*" in the causal chain. *Id*. at 10.  The Supreme Court has also squarely held, "[L]ike any other element of a cause of action, [proximate cause] must be adequately alleged at the pleading stage in order for the case to proceed." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 134 n.6 (2014). Thus, "[i]f a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed." *Id*. That is precisely the case here.

Plaintiffs were not consumers of the Magazine, nor do they allege that they contemplated purchasing similar magazines from ATI, or viewed any advertisements for them. This should, as a threshold matter, negate their G.B.L. §§ 349 and 350 claims because they are "directed at wrongs against the consuming public." *Singh v. City of New York*, 195 N.Y.S.3d 429 (2023) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Mar. Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995)). Sections 349 and 350 are not intended to prevent the criminal or unlawful misuse of otherwise legal products. Plaintiffs do not plausibly allege that their injuries were caused by the Shooter's decision to purchase the Magazine, instead of a similar magazine from a competitor of ATI.  Instead, their injuries stem from the Shooter's criminal actions.

Further, Plaintiffs are third parties harmed by the criminal actions of an alleged third-party consumer of the Magazine. The ultimate use of the Magazine is not within the purview of General Business Law §§ 349 and 350. *Himmelstein*, 150 N.Y.S.3d at 85. Because Plaintiffs' injuries are not of the kind designed to be prevented by G.B.L. §§ 349 and 350, they fail the requirement that a violation of a statute be the proximate cause of their harm to satisfy the predicate exception to the PLCAA.

### d) Plaintiffs' Claims Are Derivative

In addition to the lack of proximate cause, derivative injury claims are not actionable under G.B.L. §§ 349 and 350. As such, Plaintiffs have not suffered a cognizable injury under either section. Plaintiffs are neither consumers of ATI's products, nor are they direct competitors of ATI. Therefore, Plaintiffs' injuries are, at best, derivative of other consumers' exposure to the alleged misleading statements and are not actionable under New York law. *See Voters for Animal Rights v. D'Artagnan, Inc.*, No. 19-CV-6158(MKB), 2021 WL 1138017, at *8 (E.D.N.Y. Mar. 25, 2021) ("Plaintiff fails to allege a direct injury because the consumers, not Plaintiff, are allegedly being misled and injured by Defendants' representations").

Injuries that are too remote or derivative of a consumer's injuries are not cognizable injuries. *Blue Cross v. Philip Morris*, 3 N.Y.3d 200, 208 (2004) (holding "that a third-party payer has no standing to bring an action under [G.B.L. §] 349 because its claims are too remote" and "that what is required [under Section 349] is that the party actually injured be the one to bring suit"). "An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another person." *Id.* Furthermore, "a plaintiff may not recover damages under G.B.L. § 349 for purely indirect or derivative losses that were the result of third parties being allegedly misled or deceived." *In re Nassau County Consol. MTBE (Methyl Tertiary Butyl Ether) Prod. Liab. Lit.*, 2010 WL 4400075, at *17(Sup. Ct. Nassau Cty. Nov. 4, 2010). As such, derivative claims are those arising from injuries to other persons **or** deceptions made by defendant to other persons.

In *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. July 20, 2018), plaintiff landlords alleged that defendant media providers' standard practice was to deceive tenant-subscribers into signing misleading consent forms, and then armed with the consent forms, defendants installed their hardware in plaintiffs' buildings, which in turn injured the landlord.

26

While there were intervening steps between defendants' deceptive action and plaintiffs' harm, plaintiffs argued that so long as their harm (installation) is a proximate result of defendants' misleading conduct, they have standing to bring a G.B.L. § 349 claim. The Second Circuit disagreed, holding that standing under G.B.L. § 349 requires a direct, rather than a derivative injury. The court determined that plaintiffs must "plead that they have suffered actual injury caused by a materially misleading" act, not that a misleading act led to further steps which eventually harmed them. *Id.* Indeed, similar to the claims in this matter, the plaintiffs in *Frintzilas* attempted to avoid their lack of standing by arguing that the tenant-subscribers suffered no injury; which might be argued here as to the Shooter. However, the Second Circuit rebuked such an argument stating, "but if this is true (and it seems to be), plaintiffs cannot assert a claim under G.B.L. § 349, which requires that a materially misleading statement be made in the first place." *Id.*

Since none of the Plaintiffs were customers of ATI, their harm, if any, is derivative of harm sustained by the Shooter as the consumer of the Magazine, and they lack standing to raise claims for violation of sections 349 and 350.

## IV. CHOICE OF LAW

This Court should apply Indiana law to all of the Plaintiffs' claims and causes of action based on New York's choice of law rules and analysis because the relevant laws of New York and Indiana are in conflict, but the significant contacts all point to Indiana.

### A. Choice of Law Inquiry

Federal courts considering diversity cases are to apply the choice of law rules established by the law of their forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4-5 (1975); *see also Forest Park*

27

*Pictures v. Universal TV. Network, Inc.*, 683 F.3d 424, 433 (2d Cir.2012).  The first step in New York's choice of law inquiry is to establish whether or not there is a conflict between the laws of the different jurisdictions involved in the case. *See In re Allstate Ins. Co. (Stolarz)*, 597 N.Y.S.2d 904 (1993); *see also Forest Park Pictures*, 683 F.3d at 433 (citation omitted). A conflict between the laws of two different jurisdictions arises when each jurisdiction prescribes "different substantive rules[.]" *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir.1998) (citation omitted).

### 1.  **Actual Conflict of Laws Exists**

The relevant laws of New York and Indiana are in conflict. Pursuant to Ind. Code § 34-12-3-3(2), "a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for: … recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party."  *See* Ind. Code § 34-12-3-3(2). New York does not have any statutory immunity for firearms or ammunition manufacturers or sellers for actions arising out of the criminal or unlawful misuse of a firearm or ammunition.

Further, Plaintiffs bring wrongful death claims and seek damages on behalf of the estates of decedents pursuant to N.Y. Est. Powers & Trusts Law §§ 5-4.1 and 5-4.3 ("New York Wrongful Death Statute"). Am. Compl. ¶¶ 169, 235, 300, 365 428, 493. However, parts of the New York Wrongful Death Statute conflict with corresponding parts of Ind. Code § 34-23-1 ("Indiana Wrongful Death Statute"). A conflict exists between the type of damages which may be recovered under either the New York Wrongful Death Statute or the Indiana Wrongful Death Statute.

Under the New York Wrongful Death Statute, "punitive damages may be awarded if such damages would have been recoverable had the decedent survived." N.Y. Est. Powers & Trusts

Law § 5-4.3(b). Conversely, under the Indiana Wrongful Death Statute, in an action to recover damages for the death of an adult person, the damages may not include punitive damages. *See* Ind. Code § 34-23-1-2(c)(2)(B). Furthermore, the Indiana Wrongful Death Statute requires that "[a] parent or child who wishes to recover damages under this section has the burden of proving that the parent or child had a genuine, substantial, and ongoing relationship with the adult person before the parent or child may recover damages." *Id.* at § 34-23-1-2(f). The New York Wrongful Death Statute has no such requirement. Therefore, because a conflict exists between the New York Wrongful Death Statute and the Indiana Wrongful Death Statute, as well as the existence of an applicable immunity statute in Indiana and not in New York, a conflict of laws analysis must be undertaken.

If there is an actual conflict of law, the New York choice of laws procedure prescribes two initial questions that must be answered: "(1) what are the significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law is to regulate conduct or allocate loss." *Padula v. Lilarn Props. Corp.*, 620 N.Y.S.2d 310, 311 (1994).

### 2.  Significant Contacts Point to Indiana

The "significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort[.]" *Schultz v. Boy Scouts of Am.*, 491 N.Y.S.2d 90, 95 (1985). All of the Plaintiffs were domiciled in Indiana at the time of the claims giving rise to this case and are still domiciled in Indiana. Am. Compl. ¶¶ 30-41. Furthermore, the underlying incident and all the harm that is the subject of Plaintiffs' Complaint occurred exclusively in Indianapolis, Indiana. *Id.* ¶ 16.

The respective parties are currently domiciled in Indiana (Plaintiffs), New York (Calabro), and South Carolina (ATI and DiChario). Am. Compl. ¶¶ 30-41, 42, 49; *see also* Exhibit A. Additionally, two of the named defendants are foreign businesses domiciled outside

the United States (Schmeisser and 365 Plus). Am. Compl. ¶¶ 50, 51. Finally, the shooting and the injuries to Plaintiffs occurred in Indiana. Thus, the significant contacts point to Indiana, and, therefore, Indiana law applies to Plaintiffs' claims.

### 3. Distinction Between "Regulating Conduct" and "Allocating Loss"

Second, New York courts must determine whether the applicable law is "conduct-regulating" or "loss-allocating" before the interests of the different jurisdictions are measured and balanced. *Schultz*, 491 N.Y.S.2d at 98; *see Padula*, 620 N.Y.S.2d at 311. "Conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring." *Padula*, 620 N.Y.S.2d at 311. "Loss allocating rules, on the other hand, are those which prohibit, assign, or limit liability after the tort occurs...." *Id.*

Because the Indiana Immunity Statute prohibits recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party after the fact, the Indiana Immunity Statute is a loss-allocating law. *See* Ind. Code § 34-12-3-3(2). Additionally, because the New York Wrongful Death Statute allocates for punitive damages, whereas the Indiana Wrongful Death Statute does not, these statutes are also loss-allocating laws. *See* N.Y. Est. Powers & Trusts Law § 5-4.3(b); *see also* Ind. Code § 34-23-1-2(c)(2)(B). Therefore, a loss-allocation analysis is required under New York's choice of law rules.

### 4. Application of Loss-Allocation Analysis

The New York Court of Appeals created a three-prong choice of law analysis specifically designed for loss-allocating rules in *Neumeier v. Kuehner*, 335 N.Y.S.2d 64 (1972), the use of which was reaffirmed in *Edwards v. Erie Coach Lines Co.*, 929 N.Y.S.2d 41, 44-45 (2011). In the present case, the third rule from *Neumeier* applies and Indiana law controls Plaintiffs' claims.

The third *Neumeier* rule deals with split-domicile cases, including those in which the plaintiff is domiciled in one state, the defendant is domiciled in another state, and the tort at issue occurred in a third state, the locus state.  *Edwards*, 929 N.Y.S.2d at 52. In such cases, New York courts should presume that the law of the locus state applies. *See id.*

The parties are domiciled in different states, including Indiana, New York, and South Carolina, but the underlying incident and harm occurred exclusively in Indiana.  Am. Compl. ¶¶ 16, 30-41, 42, 49; *see also* Exhibit A.  Consequently, New York courts should apply the law of the jurisdiction in which the harm occurred, otherwise known as the locus state, which is Indiana.

Therefore, pursuant to New York's choice of law loss-allocation analysis, Indiana law applies to Plaintiffs' claims.

## V.  INDIANA STATUTORY IMMUNITY

Pursuant to Ind. Code § 34-12-3-3(2):

> Except as provided in section 5(1) or 5(2) of this chapter, a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for . . . recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

ATI is a manufacturer and seller of firearms and ammunition, even if not the manufacturer or seller of the firearm or ammunition used during the incident. Am. Compl., ¶ 43. Under subsection 3(2) of Ind. Code § 34-12-3, the Indiana Immunity Statute unambiguously states "a firearms or ammunition seller" cannot be sued for recovery of damages when "a firearm" is criminally or otherwise unlawfully misused. *See KS&E Sports v. Runnels*, 72 N.E.3d 892, 896 (Ind. 2017) (holding that by its plain terms, the Indiana Statute immunizes a firearms seller from a damages suit for injuries caused by another person's misuse of a firearm, regardless of whether the sale was lawful). In *City of Gary v. Smith & Wesson*, 126 N.E.3d 813 (Ind. Ct.

31

App. 2019), the court held, "we observe that the parties do not dispute that Subsection 3(2) of the Immunity Statute bars recovery of damages resulting from the criminal or unlawful misuse of a firearm by a third party … We therefore affirm the trial court's entry of judgment on the pleadings as to those damages." *Id.* at 827-28. The only exceptions to the immunity from suit provided by this statute is for breach of contract or warranty, or based on a claim of a defective firearm or ammunition. *See* Ind. Code § 34-12-3-5. Here, the words "defect," "defective," "warranty," or "contract" never appear in the Complaint. As such, even if the Court were to find that the PLCAA does not extinguish Plaintiffs' claims, this statute precludes their damages claims.

## VI. Failure to State a Claim

Pursuant to Fed.R.Civ.P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint does not require detailed factual allegations, but it does require more than "the defendant unlawfully harmed me accusations." *Ashcroft*, 556 U.S. at 678. Under this standard, a complaint must contain sufficient factual matter that is plausible on its face. *Id.* A plaintiff's claim is facially plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. In other words, facial plausibility requires more than a "sheer possibility that a defendant has acted unlawfully," *id*. at 678, and requires that the complaint "contain more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may be dismissed under Fed.R.Civ.P. 12(b)(6), if it offers mere labels and conclusions, or a formulaic recitation of the elements of a cause of action. *Ashcroft,* 556 U.S. at 678. Additionally, the complaint may not tender naked assertions. *Id.*

32

1.  **The Complaint Fails to Establish Causation**

Under the pleading standards illustrated in both *Iqbal* and *Twombly,* Plaintiffs' claims

should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because the Complaint fails to establish

causation as a matter of law. The requirement of causation as an element of liability for a

negligent act includes the requirement that the consequences be foreseeable. *Control Techniques,*

*Inc. v. Johnson*, 762 N.E.2d 104, 106 (Ind. 2002). A superseding cause that forecloses liability of

the original actor is, by definition, not reasonably foreseeable by a person standing in the shoes

of that actor. *Id.* Proximate cause is a question of law "where only a single conclusion can be

drawn from the facts." *Fast Eddie's v. Hall*, 688 N.E.2d 1270, 1274 (Ind. Ct. App. 1997).

Both Indiana and New York courts have found that the "willful, malicious criminal act of

a third party" constitutes "an intervening act which breaks the causal chain between the alleged

negligence and the resulting harm." *See Fast Eddie's*, 688 N.E.2d at 1274 (holding that a

tavern's alleged violation of Dram Shop Act, by serving alcohol to visibly intoxicated patron and

assailant, was not proximate cause of assault and murder); *see also Santiago v. NYC Housing*

*Authority*, 475 N.Y.S.2d 50, 52 (N.Y. App. Div. 1984) (holding that the act of a third-party

shooter was a superseding, intervening act which was the proximate cause of plaintiff's injury).

The Shooter's willful, malicious criminal act constitutes an intervening act which breaks

the causal chain because it was not reasonably foreseeable that the ATI Defendants' alleged

negligence would result in a criminal shooting. Plaintiffs merely claim that Defendants engaged

in "several reckless practices" that "directly and foreseeably channeled [the Magazine] into the

hands of the Shooter or somebody like him." Am. Compl. ¶ 16. Furthermore, as stated by the

court in *Fast Eddie's*, "assault and murder are intentional acts of volition which are the result of

an assailant's deliberate design[,]" and, similarly, the Shooter's "criminal intent would have been

present" with or without the Magazine. *See* 688 N.E.2d at 1275.  Indeed, Plaintiffs acknowledge that the "Shooter armed himself with multiple [magazines]" during the shooting incident. Am. Compl. ¶ 17. Therefore, the advertisements of the Magazine were not the proximate cause of Plaintiffs' injuries, and Plaintiffs' claims against the ATI Defendants should be dismissed.

### 2.  The Complaint Fails to State a Claim Against DiChario and Calabro

Plaintiffs allege that Defendants DiChario and Calabro are liable for their damages based on their respective positions as President and Director of Marketing and Purchasing of ATI. Am. Compl. ¶¶ 46, 48. However, this is an insufficient basis for imposing liability on corporate officers and employees for the acts of the corporation.

Both Indiana and New York law provide that a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character. *See Greenway Plaza Office Park-1, LLC v. Metro Construction Services, Inc.*, 771 N.Y.S.2d 532 (N.Y. App. Div. 2004); *see also State, Civil Rights Comn'n v. County Line Park, Inc.*, 738 N.E.2d 1044, 1050 (Ind. 2000). A corporate officer is only individually liable for torts they have personally committed. *See Rajeev Sindhwani, M.D., PLLC v. Coe Bus. Serv., Inc.*, 861 N.Y.S.2d 705 (N.Y. App. Div. 2008) (holding a corporate officer personally liable for participating in conversion); *see also State, Civil Rights Comm'n*, 738 N.E.2d at 1050 (holding corporate officers personally liable for directly participating in housing discrimination).

There are no allegations that defendants DiChario and Calabro directly or personally participated in the production of the allegedly negligent advertisements or sale of the Magazine. Plaintiffs merely allege "upon information and belief" that "DiChario is aware of or ultimately approves American Tactical's marketing" and that Calabro "oversees and directs American Tactical marketing." Am. Compl. ¶¶ 46, 48. In fact, Plaintiffs acknowledge that "[t]he marketing

videos were produced by firearms media production company Polenar Tactical." Am. Compl. ¶ 110. Any publication of the marketing videos was done by ATI, not personally by DiChario or Calabro. Similarly, Plaintiffs acknowledge that ATI "sells its [magazines] like the Magazine used in the Attack through other online firearms websites, also without any limitations, screening, or further inquiry." *Id.* ¶ 138. Likewise, the Magazine was sold by ATI, not DiChario or Calabro. Any actions taken by DiChario and Calabro were performed exclusively within the scope of their employment as an officer and employee of ATI. Therefore, they are not personally liable for the allegedly negligent acts of ATI.

### 3. Manufacturing and Selling Firearms Is Not a "Public Nuisance"

Even if the PLCAA somehow did not bar public-nuisance claims, Plaintiffs fail to state a claim for public nuisance. Compl. ¶¶ 30, 92, 124, 138, 148, 179-195, 214-230, 265-281. The overwhelming weight of authority holds that selling and manufacturing lawful products cannot give rise to a public-nuisance claim, and this case provides no reason to depart from that consensus.

Although various plaintiffs have tried to file public-nuisance claims "against the makers of products that have caused harm, such as tobacco, firearms, and lead paint," those claims have been squarely "rejected by most courts . . . because the common law of public nuisance is an inapt vehicle." RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 8 cmt. G (2020). A recent example comes from the Supreme Court of Oklahoma, which canvassed the common law and held that the "public nuisance" doctrine does not apply to "the manufacturing, marketing, and selling of lawful products." *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 725 (Okla. 2021) (rejecting claim against prescription opioid manufacturer). That conclusion is firmly grounded in the common law, which limits public nuisance actions to violations of

"public rights," which must be "more than an aggregate of private rights by a large number of injured people." *Id*. at 726. As a result, plaintiffs cannot bring a public nuisance claim based on "individual injuries sustained from use of a lawful product." *Id*. at 727.

Courts have repeatedly applied this principle to the sale and manufacturing of firearms. For example, in *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004), the Illinois Supreme Court rejected a public-nuisance claim against firearms manufacturers, holding that there is no "public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *Id*. at 1116. If the rule were otherwise, then "nuisance liability [could] be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products." *Id*. After all, distributing a wide range of products "could be said to contribute to an interference with the public right" to be "free from the threat that others may use a lawful product to break the law." *Id*. But the public-nuisance doctrine cannot rationally extend so far.[6]

In the event Plaintiffs claim that New York law applies, in a case brought by the State of New York against various firearms manufacturers for public nuisance based on their manufacturing, distribution, marketing and sales practices, the Appellate Division, First Department held, "[T]he New York Court of Appeals has never recognized a common-law

---

[6] *See also, e.g.*, *City of Philadelphia v. Beretta U.S.A. Corp.,* 277 F.3d 415, 420-22 *(3d Cir. 2002)* ("[T]o extend public nuisance law to embrace the manufacture of handguns would be unprecedented nationwide for an appellate court."); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta*, 273 F.3d 536, 541 (3d Cir. 2001) (same); *Sturm, Ruger & Co.*, 761 N.Y.S.2d at 196 (refusing to give "a green light to a common-law public nuisance cause of action" against firearms manufacturers, which would sweep in "a wide and varied array of other commercial and manufacturing enterprises and activities"); *Penelas v. Arms Tech., Inc.*, 778 So. 2d 1042, 1044-45 (Fla. Dist. Ct. App. 2001) (rejecting public-nuisance claim as "an attempt to regulate firearms and ammunition through the medium of the judiciary").

public nuisance cause of action based on allegations like those in this complaint." *People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 195 (N.Y. App. Div. 2003). The Appellate Division relied on the Court of Appeals decision in a similar case against firearm manufacturers and sellers "in the context of a lawsuit by private plaintiffs against defendants based on a claim, inter alia, of negligent marketing, a tort different from the instant common-law public nuisance claim." *Id.* at 95 (citing *Hamilton v. Beretta USA Corp.*, 96 N.Y.2d 222 (2001)). In dismissing plaintiff's common law nuisance claim, the court followed the Court of Appeals' *Hamilton* reasoning and stated, "giving a green light to a common-law public nuisance cause of action today will, in our judgment, likely open the courthouse doors to a flood of limitless, similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities." *Id.* at 96; *see also Hamilton* at 233. The court in *Spitzer* granted defendant's motion to dismiss for failure to state a cause action, based primarily on the following reasoning:

> the importance and fairness of considering such concepts as remoteness, duty, proximate cause and the significance of the indisputable intervention of unlawful and frequently violent acts of criminals—over whom defendants have absolutely no control—who actually, directly, and most often intentionally, cause the cited harm; the significance and unfairness of holding defendants accountable even though their commercial activity is wholly lawful and currently heavily regulated, and that their products are non-defective; and the plain fact that courts are the least suited, least equipped, and thus the least appropriate branch of government to regulate and micro-manage the manufacturing, marketing, distribution and sale of handguns.

*People ex rel. Spitzer,* 761 N.Y.S.2d at 199. As such, this Court should follow the above well-reasoned decisions and dismiss Plaintiffs' public nuisance causes of action.

## CONCLUSION

For the above reasons, the ATI Defendants respectfully request that this Court grant their motion and dismiss this case for improper venue, dismiss the case against DiChario based on lack of

personal jurisdiction, dismiss all of Plaintiffs' claims on the basis that they are barred by statutory immunity and/or fail to state a claim upon which relief can be granted, and grant such further relief as it deems just and proper.

Dated: October 30, 2023

Respectfully submitted,

/s/*Jeffrey Malsch*
Christopher Renzulli (Admission/pro hac vice to be filed)
Jeffrey Malsch
Scott C. Allan
Justin Gottuso (Admission/pro hac vice to be filed)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
crenzulli@renzullilaw.com
jmalsch@renzullilaw.com
sallan@renzullilaw.com
jgottuso@renzullilaw.com

Counsel for Defendants American Tactical, Inc., Anthony DiChario, and Joseph Calabro

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey Malsch, attorney for Defendants American Tactical, Inc., Anthony DiChario, and Joseph Calabro hereby certify that on the 30th day of October, 2023, a true copy of the foregoing was filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be served by first-class mail, postage prepaid, upon anyone indicated as a non-registered participant.

<u>/s/*Jeffrey Malsch*</u>
Jeffrey Malsch
jmalsch@renzullilaw.com